## Matherly v. Johnson's Executors et al.

(Decided May 18, 1934.)

CHARLES S. MATHERLY for appellant.

GAITHER & PURYEAR for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

In 1921 James L. Johnson died testate a citizen and resident of Mercer county, Ky.

By his will he nominated his children, G. L. Johnson and Ethel Johnson Martin (the appellants), as executors of his estate. After his death, they duly quali-

fied as such and proceeded to administer the same according to the directions of the will.

The clauses of the will pertinent to the questions here involved are as follows:

"3. During the life of my son and daughter I wish my farm to be kept in its present state of cultivation and fertility, the building and fence to be kept in good repair, so that when my grandchildren receive my land it will be practically in the same condition as when received by my children.

"5. If at my death I have not sufficient money on hand to pay my just debts and funeral expenses, I do not wish any of my land sold for this purpose, but now authorize and empower my executors to pledge the same for so much money as is necessary and to repay it out of the proceeds arising from the income from my estate."

In administering the estate, the executors found that the testator had died owing an indebtedness which, together with his funeral expenses, amounted to some $2,600. After applying all the personal property of the estate to the payment of this indebtedness, there yet remained owing by it $2,350 and interest, for which his creditors were making demand for payment and threatening to bring suit if not paid.

To avoid such threatened litigation and also with the view of carrying out the intention and desire of the testator as expressed in his will, the executors filed suit under the Declaratory Judgment Act (Civil Code of Practice, sec. 639a-1 et seq.), wherein they alleged and set out that the decedent, James L. Johnson, died testate, leaving surviving him his widow and two children, G. L. Johnson and Ethel Johnson Martin (the appellants), named as his executors, to the first of whom there had been born as the issue of his marriage with Woody Johnson the three named infant defendants, Nancy Lee Johnson, Richard G. Johnson, and Roger S. Johnson, and to his daughter, Ethel Martin, as the issue of her intermarriage with Walter Martin, the two adult children and defendants, James Martin and Cora Martin Royalty. The petition further alleged that the testator had by his will devised his property, subject to the support of his widow and the payment of his debts, funeral expenses, and costs of administration, to his two

children, G. L. Johnson and Ethel Martin, for life, with the remainder interests therein to their children, his grandchildren, surviving them.

The petition further averred that the decedent's property remaining after application of the personal property to the partial satisfaction of the testator's debts and funeral expenses consisted only of his farm in Mercer county, appraised as being of the value of some $10,000. Also it averred that the improvements of the farm were then in need of repairs, which the will directed to be made, and for which some $250 would be required. Yet further it averred that, as there were no other assets remaining in the estate except this farm, devised to testator's children and grandchildren, it was necessary, in order to raise funds with which to pay the estate's indebtedness and to make the repairs called for, either to sell a part of the land or to procure the money therefor by mortgaging it, as directed by clause 5 of the will. Plaintiffs further alleged that to sell the farm or any part thereof for paying the indebtedness would defeat the intention and purpose of the testator as expressly declared against by clause 5 of his will, and would also result in a sacrifice of the proeprty by its sale at an inadequate price, for which reasons they deemed it was for the best interest of all parties concerned that the plaintiffs should be adjudged authorized to borrow, as contemplated and directed by the will, the sum of $2,600 with which to pay the estate debts and cost of repairs, and to pledge the whole farm as security for the debt, which was to be repaid out of the proceeds arising from the operation of the farm, as also by the will directed.

Plaintiffs averred that a controversy had arisen as to the authority of the plaintiffs to mortgage the farm to procure such loan, which would require a pledge of the fee-simple title to the farm rather than only the executors' life estate therein, as they had found it impossible to procure the required loan upon such terms. Wherefore the executors, as plaintiffs below, prayed for a declaration of their rights in the premises; that the court decree that they, as executors of the will, had thereunder the legal authority to borrow the sum of $2,600 with which to pay decedent's debts and funeral expenses and the cost of needed repairs upon the farm improvements and to secure its payment by a mortgage on the said real estate which, when executed, would con-

vey the fee-simple title to said entire farm, embracing all the rights and interests of all parties (plaintiffs and defendants); and be further authorized to repay the amount so borrowed out of the proceeds arising from the income of said real estate.

A guardian ad litem was appointed for the infant defendants who duly reported that, after investigation made, he was of the opinion the court should enter a judgment construing the will as authorizing the executors to borrow sufficient money to meet the obligations of the decedent and to execute a mortgage upon all the interests of the parties in the devised land for the same.

The court, upon final submission of the cause upon the pleadings and answer of the guardian ad litem and upon the exhibits and proof orally heard, adjudged the plaintiffs entitled to the relief sought, and that the executors of the will were by it authorized to "borrow $2,600 for the payment of the debts of the estate," and empowered to pledge the real estate described in the petition therefor by mortgage conveying the fee-simple title, including all the right and interest of all the parties, plaintiffs and defendants, life tenants and remaindermen, and which mortgage was accordingly adjudged to be made and executed upon the lands, in the appropriate way and manner therein directed, by plaintiffs as executors of the will.

From this judgment the appellant guardian ad litem has appealed, seeking the court's approval or disapproval of it to the end that the question herein presented might be finally determined and the estate settled.

The question thus presented is one turning, as we conceive, upon the construction of clauses 3 and 5 of the will.

These clauses we are of the opinion very clearly and properly express the testator's intention and wish in respect to the two matters here involved, which are: (1) The executors' right and duty to make repairs upon the farm buildings and fences and to maintain the farm in its present high state of fertility, as by clause No. 3 requested, and, if found necessary in order to make such repairs, to raise the funds therefor by mortgage of the farm; and (2) their right to raise funds, by mortgage of the farm, to pay the decedent's indebtedness, funeral expenses, and costs of administration, as by clause No. 5 directed, if it should be found that no other funds or

property were available therefor except such as might be procured through a sale or a mortgage of the real estate.

Both the petition and also the brief of the guardian ad litem allege and state that the $2,600, which the executors here ask to be allowed to borrow upon the pledge of the farm as security therefor, is sought for paying two items, one, the sum of $2,350, required for paying the estate's indebtedness, the other, the sum of $250, required for the purpose of making the necessary repairs on the improvements on the farm. The judgment of the learned trial court, therefore, in holding the executors authorized under the will to borrow the total sum asked of $2,600, which thus embraces in its amount both items, is, we infer, to be taken as authorizing the executors to procure a loan in such amount, to be secured by mortgage, with which to pay both the estate's indebtedness of $2,350 and also the cost of repairs upon the improvements of the farm in the sum of $250, even though the exact language of the judgment is that the executors were authorized to borrow the $2,600 for the payment of the debts of the estate.

We are of the opinion that, if the judgment is to be understood as adjudging the executors authorized to borrow only such an amount as is required to pay the funeral expenses, costs of administration, and indebtedness of the estate with interest, the same is proper; but, on the other hand, if it is to be taken as going further, by providing that the executors might also borrow upon a mortgage of the farm the further amount of $250 for the purpose of repairing the improvements of the farm, that to such extent the judgment is erroneous.

Inasmuch as the amount authorized by the judgment to be borrowed is the sum of $2,600, which is the total amount stated and asked for in the petition and brief as required for paying both the estate's indebtedness and the cost of repairs, we conclude that the judgment must be taken as authorizing the executors to borrow this sum upon mortgage for both purposes, and that it is erroneous to the extent it authorizes a pledging of the farm for loans procured for making only requested repairs.

By clause 3 of the will, the testator very clearly and in appropriate language for expressing his intention declares that it is his wish that his farm be kept in its

present state of cultivation and fertility, and that the buildings and fences be kept in good repair, so that, when his grandchildren receive his land, it will be turned over to them practically in the same condition it was when received from him by his children, but the clause goes no further than to express merely his wish that such things should be done and evinces no intention, by the language used, to authorize the executors to borrow, upon pledge of the farm for such purposes.

It is ever our primary object in construing a will to ascertain from its language what is the testator's wish and intent as thereby expressed in the words of his will when given their ordinary, usual meaning—in which sense, it is to be assumed, they were employed by him. When the meaning of this clause is thus sought and the testator's intention ascertained from the plain language therein used by him, when taken in its ordinary meaning, it is manifest that the words employed only signify the testator's wish that his children, to whom he devised the land for their lives, should so care for and husband the farm given them as would enable them, upon the termination of their life estates, to turn over the lands and improvements thereon to his grandchildren, their children, in substantially as good and valuable form and condition as when received by them.

Inasmuch as the testator has shown ample capacity to adequately and effectively express by the quite different language employed by him in clause 5 of his will, when making provision for the payment of his debts and to such end by clear and appropriate words, when desired to direct and expressly authorize his children, as his executors, to pledge the lands devised them, if found necessary to procure money with which to pay his debts, we conclude that the testator's failure to thus empower his executors to pledge the land for the purpose of making the requested repairs clearly signifies an absence of intention on the part of the testator that they should have authority to so make them. The testator's will clearly evinces his capacity to effectively express in fitting language his intention as to how he wished his estate both devised and administered.

By clause 5 of the will, it is provided that, if at testator's death he should not have sufficient money on hand to pay his just debts and funeral expenses, he does not wish any of his land sold to secure funds for such

purpose, but expressly authorizes and empowers his executors, in such event, to pledge his farm devised his children and grandchildren for a loan in such an amount as is found necessary to pay the estate's indebtedness, after which he directs that such mortgage debt so made is to be repaid out of the proceeds arising from income received from his lands.

Construing together these two clauses of the will, we are left without doubt that by clause 3 the testator intended to confer no authority upon his executors to borrow, for the purpose of making repairs, upon the lands devised them for life, perhaps at the expense of his grandchildren, but did only thereby admonish and request his children to keep and maintain the lands during their use of them in as good state and condition of fertility and repairs as that in which he had maintained them, when turned over to them. Testator's purpose and natural expectation, expressed in clause No. 3 of the will only as his wish, was that by good husbandry his children would be able to keep the farm in the same condition of fertility and repair in which received by them, and bear the expense incident thereto out of the income derived by them from their use of the farm. However, in construing clause 5 of the will, we are equally confident that the testator could have only thereby intended to empower and confer upon his two children, as his executors, the limited authority to pledge the farm for the one stated purpose of raising funds with which to pay his debts, administration costs, and funeral expenses. The testator expressly in said clause declares that it is not his wish that any part of his land be sold for the purpose of paying his indebtedness, and by clause 4 of the will, in regard to a sale of the farm, he further declares that, should his executors deem it materially advantageous to sell his real estate, they were authorized to do so with the limitation, or only upon the condition, that all the sale proceeds derived therefrom should be reinvested in real estate, to be held under the same terms and conditions as contained in his will for his grandchildren.

Inasmuch as it is clearly the right and within the authority of a testator to dispose of his estate according to his own will, purpose, and plan, and the testator having here exercised such right by the very clear and plain language employed by him in his will for expressing what his testamentary plan and purpose was, and

whereby he had made manifest his intention, it is our duty to give it effect. Here there exists no reason, under color of construction, for us to in anywise modify or make anew any part or clause of this will, which, when interpreted in the ordinary and plain meaning of its words and language, leaves no doubt as to what was the intention of the testator. Such rule of interpretation and construction we deem too fundamental to here require citation or authority for its support.

Such being our opinion, we conclude that the judgment of the trial court in holding that the executors of the will were authorized under its terms to borrow, and secure the same by mortgage on the farm, a sufficient sum with which to pay the decedent's funeral expenses, costs of administering, and other indebtedness, with interest, of the estate, as directed by clause 5 of the will, clearly represented a proper and correct interpretation thereof, and to such extent the judgment is affirmed, but, construing the said judgment as also authorizng the executors to borrow and secure by mortgage on the place a further sum for the purpose of paying for needed repair of the farm's improvements, we conclude that to such extent it is erroneous, as it is our opinion that borrowing for repairs was not authorized by the terms of the will, and to such extent the lower court's judgment is reversed.

Therefore the cause is remanded, with instructions to enter judgment consistent with this opinion.